**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

WILLIAM A. DORSEY
AND ANGELA D. DORSEY
4404 Adelle Terrace
Baltimore, MD 21229
        **Plaintiffs**

Vs.

THE VETERANS ADMINISTRATION
820 Chesapeake St. NW
Washington, DC 20001
        **Defendants**

CASE NUMBER 1:05CV01144

JUDGE: Henry H. Kennedy

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 06/09/2005

## MOTION FOR A TEMPORARY RESTRAINING ORDER TO STAY PENDING EVICTION IN ORDER TO ALLOW VA TO INVESTIGATE AND DETERMINE THAT THE PLAINTIFF VETERAN WAS DENIED HIS RIGHTS DUE TO A MATERIAL MISREPRESENTATION OF REINSTATEMENT MORTGAGE AMOUNT WHICH CAUSED REJECTION OF THE CORRECT AMOUNT DUE AND OWING AT THAT TIME.

Comes now the plaintiffs by and through their counsel Claude Roxborough Esq. and moves this honorable court to issue a temporary restraining order against the defendant, Veterans Administration and any of his agents and operatives from evicting the plaintiffs from their occupancy of 4404 Adell Terrace, Baltimore, MD and any conveyance of said real property. As reasons therefore the plaintiffs state the following:

### JURISDICTION

1. This court has jurisdiction under Title 38 USC section 101 and section 7305

### PARTIES

2. William A Dorsey and Angela D. Dorsey are husband and wife joint tenants of VA insured property located at 4404 Adelle Terrace, Baltimore, MD 21229
3. The Veterans Administration is a United States Government agency which among other things provides mortgage insurance for eligible veterans to facilitate home purchase and other assistance such as counseling recasting, repurchasing and reinstatement of loans in arrears.

### STATEMENT OF THE FACTS
(Misrepresentation and unlawful denial of Veteran Benefits)

4. On or about July 8, 2004 a reinstatement letter was issued to the plaintiffs by the Law Firm of Covahey, Boozer, Devan & Dore, and P.A on behalf the Veterans Administration servicing agent which "confirmed that the amount necessary to reinstate the mortgage account for the above property is $33,132.12."
5. The letter was completely incorrect in its calculation and statement that the plaintiffs were in arrears 23 payments amounting to $ 23,514.97. The plaintiffs were 5months in arrears and experiencing an employment transition.
6. The plaintiffs were directed by the DVA to contact the Veterans Benefits Administration in Roanoke, Virginia. The Plaintiff spoke to Ms. Donna Mollica of that office and were advised that the amount stated by the Law Firm as the

2

arrearage was beyond the limits of the VA work out program (A program where VA will assert its authority over the servicer to provide a recasting or amendment of the payment requirements to allow the veteran to catch up and become current).

7. The plaintiffs advised and pleaded with Ms. Mollica to check with the servicer offering evidence that the reinstatement amount was incorrect, the Veterans Benefits office failed to require the servicer to account and denied the plaintiffs any assistance whatsoever.
8. Without VA intervention the foreclosure went forward and the plaintiff were forced to file for bankruptcy protection under Chapter 13. No account was ever given or provided by the servicer and the misrepresented arrearages amount was beyond an acceptable and practical plan. The property was foreclosed.
9. The Plaintiffs retained other counsel to look into the matter. At that time they were facing eviction. This counsel provided the Veterans Administration with data reflecting the fact that the plaintiffs were never 23 months in arrears as was falsely reported by the servicer's representative. Copies of this letter were sent to Veterans organization as well as to Congressman Elijah Cummings of Baltimore.
10. Facing eviction the Congressman Elijah Cummings directly intervened demanding that the Veterans Administration provide a comprehensive response to the concerns raised by the letter of plaintiff's Counsel. The eviction was stopped but no response has ever been made to the letter challenging the false reinstatement amount and the denial of benefits to the plaintiff.
11. The plaintiff who have credit and stable employment are capable of repurchasing or paying off the money due to VA the holder of the note. They are also willing got put up a bond of $ 10,000. to stay the eviction and have the congressional and veteran community pursue a remedy they should have had but for the misrepresented reinstatement amount.
12. Without any further communication the Veterans Administration has set the eviction for June 10, 2005.

Wherefore upon the premises considered the plaintiff prays that the eviction action be enjoined and that the Veterans Administration be required to investigate the false reinstatement amount and redress the harm caused the veteran by allowing him to pay off the indebtedness.

Respectfully submitted

Claude Roxborough Esq.
7629 Carroll Ave. Southern Suite
Tokoma Park, Maryland
202 872-0220

FILED
JUN - 9 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM A. DORSEY
AND ANGELA D. DORSEY
4404 Adelle Terrace
Baltimore, MD 21229
      **Plaintiffs**

Vs.                      CA: 05 1144

THE VETERANS ADMINISTRATION
820 Chesapeake St. NW
Washington, DC 20001
      Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

### THE STANDARD FOR GRANTING INJUNCTIVE RELIEF

This complaint seeks to enjoin the Defendant, Veterans administration, its agents and assigns form evicting the plaintiffs to allow for an investigation into the false misrepresentation made by the servicing agent as to the reinstatement amount due on the plaintiffs VA guaranteed loan, This Misrepresentation was a material impediment to the plaintiffs in obtaining rights due them through the VA Counseling and reinstatement program. The injunction staying the eviction will preserve the status quo and allow a fair and full investigation of the merits of the misrepresentation and its affect on the VA process, as well as the time and opportunity to cure the detrimental impact of such misrepresentation. Communications have been sent to the VA and no response has been given addressing the claims of the plaintiffs. The plaintiffs are beneficiaries of Veterans Administration protection.

A. The purpose of a preliminary injunction:
    The purpose of a preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and fully investigated and determined by strict legal proofs and in accordance to principles of equity. Sinclair Refining Co. v Midland Oil Co., 55 F.2d 42, 45: Blount v. Societe, 53 F. 59; King County Raisin Co. v U.S. Consol Raisin Co. 182 F. 59.
    The preliminary injunction "serves as an equitable policing measure to prevent the parties from harming one another during the litigation. Hamilton Watch Co. v. Benrus Watch Co. 206 F 2d 738. In the instant case the injunction seeks to stop the Defendant, from any and all possession actions, eviction and or conveyance of the aforementioned real property while the matter of enforceability of Plaintiffs' rights to reinstate and or repurchase is pending before the court. The Defendant has already and is in the process of evicting the plaintiffs from the subject property. Time is need for the VA to consider

the claim and delay the eviction. Such a stay of the eviction will maintain the status quo without prejudice to the VA and at the same time allow for the VA to consider its beneficiaries interest and opportunity to redeem, reinstate the loan or purchase the said subject property. The plaintiffs are willing to post a bond as assurance against any possible loss that may be cause to them by virtue of the stay of the eviction. Thus the complaint also motions the court to issue a temporary restraining order to stay the immediate and irreparable harm to the legal rights of the plaintiffs and motions the court to enjoin Defendant's actions.

B. The Standard

Whether or not a preliminary injunction Temporary Restraining order should issue is ordinarily a matter of discretion for the Court to be exercised upon this series of estimates; the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of Temporary Restraining Order and preliminary relief, the probability of the ultimate success or failure of the suit, the balancing of damage and convenience generally. Embassy Dairy. Camalier, 93 US APP. DC 364; 211 F 2d 41 citing concurring opinion in Communist Party v. McCrath, 96 F Supp 47,48; Commercial State Bank of Roseville v Gidney, 174 F Supp. 770; SEX v Investment Bankers of America, Inc 180 F. Supp. 346.
In order to justify a temporary injunction it is not necessary that the plaintiffs' right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present ( i.e. the balance of hardships tips decidedly toward plaintiffs). It will ordinarily be enough that the plaintiffs have raised questions going to the merits so serious, substantial, difficult and doubtful, as to make a fair ground for litigation and thus for more deliberate investigation. Hamilton Watch v Benrus Watch Co., 206 F. 2d 738 The balance of hardship tips decidedly toward the plaintiffs. The plaintiffs had a right to reinstate the arrearages at the correct amount The misrepresentation by the servicing agent materially interfered with the VA process for work out plans veteran beneficiaries are entitled.

C. Plaintiffs' need for protection must be given considerable weight:
The granting of the temporary injunction does not determine the rights of the parties. In the exercise of its discretion it is sufficient if the court is satisfied that there is a probable right and a probable danger and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiffs as contrasted with the probable injury to the defendant. Sinclair Refining Co. v Midland Oil Co 55 F. 2d 42. Enjoining the Defendant, from evicting the veteran beneficiaries from the property will allow Plaintiffs to have time to enforce their right of restitution. Without the injunction the right is certain to lost and the public confidence in VA administration of the beneficiaries right under the provisions of Veteran Administration process and procedures such as counseling and intervention necessary to protect veterans from lenders who profit by VA insurance overpaying servicers for money they have already received.

D. The Court must consider the needs of the public interest:

Courts of equity may, and frequently do, go much further both to give and to withhold relief in furtherance of the public interest when only private interest are involved. Yakus v. United States, 321 US 414. See also Benson Hotel Corp. v Woods, 168 F.2d 694; United States v. United Mine Workers of America, 330 US 258. In the instant case having the court enjoin an eviction, its irreparable harm to allow more response and investigation into the claims of the plaintiffs serves the public interest by honoring not only their general expectations that proper oversight of VA loans by the Veterans Administration will be enforced. Veterans Administration, Under title 38 USC 101 and 7305 has published for the public the following:

### When Payments Cannot Be Made on Due Date

Even the most reliable borrowers sometimes fail to meet every payment on its due date, and it is possible that there is good reason for the failure, such as a reduction of earnings or illness in the family.

If you find that you will be unable to make your payment when it is due, by all means let your lender know and try to work out a satisfactory plan to make up the payments missed.

The lender's friendly advice may be most helpful when you are in a tight spot. Try to call the lender before it is necessary that the lender write to you, but never fail to answer notices or letters you may receive.

In emergencies, the first impulse sometimes is to borrow money in order to keep the mortgage payments current. However, any new loan must be paid off in a short time through burdensome installments, and the extra strain often leads to more serious financial trouble.

It is far better to call the holder of your mortgage and frankly explain your trouble. Put "all your cards on the table." If you can, offer some plan for catching up on your payments and request advice and guidance not to ask for sympathy but to let the lender know that you are anxious to keep your home, and sincere in your desire to find a way out of your trouble. If you are willing to cooperate, your sincerity will be appreciated. If possible, the lender will help you develop a plan that will enable you to keep your home.

Failure to cooperate with your lender may result in the loss of your home by foreclosure of the mortgage. Besides causing the loss of your home, this would naturally have a very bad effect on your credit standing, and may even leave you with a debt. You can, and should, avoid this.

### When Financial Troubles Arise

When serious financial troubles arise, it is obvious that living expenses must be cut to the bone. Most of the luxuries previously enjoyed, and even some things which may have been thought of as necessary, may have to be dropped for a time.

In order to help veterans in serious financial trouble, VA Regional Loan Centers have technicians available to conduct financial counseling. This counseling is designed to help you avoid foreclosure. If you want this assistance, call 1-800-827-1000 and ask for the number to reach a Loan Service Representative that can assist you.

The Veterans Administration has also published to the public under the Code the following mission statement regarding VA home ownership:

Mission Statement: The mission of the Loan Guaranty Monitoring Unit is to protect the interests of the Government and the veterans we serve by ensuring that program participants process and close VA home loans in accordance with the law, regulations, and program directives.

The VA Loan Guaranty Monitoring Unit was created in 1989 to perform oversight of VA lender operations through a program of performance audits. Lender audits are performed both onsite at lenders' offices and at the Monitoring Unit's office in Nashville, TN. The audits include a review of loans to determine that the lender met VA requirements in the appraisal and valuation of property as well as the processing, underwriting, and closing of the home loan.

Although the Unit has a current staff of less than 20 employees, it has performed over 1,000 lender audits since its inception.

The results of Monitoring Unit audits include:

- *Obtaining refunds to veterans for unallowed charges and overcharges*
- Ensuring that the homes which are security for loans meet VA minimum property standards
- Protecting the taxpayer against loss by obtaining indemnification for loan processing that clearly does not meet program requirements
- Recovering losses suffered on loan defaults that result from poorly processed loans that should not have been made
- Educating lenders about program requirements to improve the quality of loans

Wherefore the plaintiff prays that the Court enjoin the defendant from evicting the plaintiffs to allow further investigation of the claims that the servicer misrepresented the reinstatement amount barring them from qualifying for the VA counseling and work out plan to bring their mortgage current.

Respectfully Submitted

Claude Roxborough

**FILED**

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM A. DORSEY
AND ANGELA D. DORSEY
4404 Adelle Terrace
Baltimore, MD 21229
      **Plaintiffs**
Vs.                            CA:    05 1144

THE VETERANS ADMINISTRATION
820 Chesapeake St. NW
Washington, DC 20001
      **Defendants**

LOCAL RULE 65.1

On or about 3:30 PM June 8, 2005, I contacted Susan L Coakley, Attorney and agent for the Veterans Administration hereinafter known as the purchaser and advised her that I would be filing a complaint for injunctive relief as well a motion of Temporary Restraining Order to stay the eviction set for June 10, 2005 of the plaintiffs from their property located a 4404 Adelle Terrace, Baltimore, MD 21229. I asked her how I could have the complaint sent to her. She advised me to have it faxed to 301 490-1568. I thereupon faxed the complaint to that number and received a confirmation that the faxed had been received.

Respectfully submitted

Claude Roxborough Esq.
7629 Carroll Ave. Southern Suite
Tokoma Park, Maryland

```
                    ********************
                    ***   TX REPORT   ***
                    ********************

      TRANSMISSION OK

      TX/RX NO                  4245
      CONNECTION TEL                       13014901568
      SUBADDRESS
      CONNECTION ID
      ST. TIME                  06/09 04:01
      USAGE T                   04'30
      PGS. SENT                 19
      RESULT                    OK
```



# Fax Cover Sheet

FedEx Kinko's of  325 7th Street N.W.    Telephone: 202.544.4796   Fax: 202.347.8737

Date _____

Number of pages _____ (including cover page)

**To:**

Name _Susan Coakley_

Company _ATF_

Telephone _____

Fax _301-490-1568_

**From:**

Name _C Roxburgh_

Company _Kimmely Roxburgh_

Telephone _202-872-0220_
_301-875-4349(c)_

Comments

05 1144

# FILED

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT